**George CANN, Plaintiff–Appellant,**

v.

**CARPENTERS' PENSION TRUST FUND FOR NORTHERN CALIFORNIA, Defendant–Appellee.**

**No. 91–15628.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1992.

Withdrawn from submission Dec. 10, 1992.

Resubmitted Dec. 24, 1992.

Decided March 25, 1993.

---

Ronald Dean, Pacific Palisades, CA, for plaintiff-appellant.

Robert M. Hirsch, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, CA, for defendant-appellee.

Before: ALARCON, HALL and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

■ George Cann appeals the district court's decision that he is entitled to only $19,847.00 of the $51,600.24 in attorneys' fees that he requested under ERISA's attorneys' fees provision, 29 U.S.C. § 1132(g)(1). The issues are whether the statute allows for attorneys' fees for the administrative phase of the claims process, and whether it allows for enhancement for contingency. We hold that it allows for neither, and affirm.

## I. Facts.

Cann had disputes regarding his pension eligibility with the southern, and then the northern, carpenters' union pension trusts. He prevailed against the Southern California trust in 1987. *Cann v. Carpenters' Pension Trust for Southern California*, 662 F.Supp. 501 (C.D.Cal.1987). His attorney in that action was Ronald Dean. That same year, the Northern California trust, appellee here, rejected his claim. He retained Mr. Dean, the attorney who had won his Southern California case for him, to pursue his Northern California case. The fee was contingent on winning—Mr. Dean would receive no fees except what the court might award. On behalf of his client, Mr. Dean made a demand for pension credits and filed an appeal with the Northern California trust according to the trust's internal appeals procedure in 1988. After being advised that he had lost the administrative appeal, he filed this lawsuit on February 20, 1990.

The parties settled the lawsuit in September of 1990. The terms were that Mr. Cann won on the merits, obtaining a $67 per month lifetime pension, but the amount of the attorneys' fees to be awarded was to be litigated. Mr. Dean sought an award of $51,600.24. This figure was double the sum of the hours worked by each of the three attorneys on the case times their hourly rates. The hours ran from March 1988, when negotiations with the trust began, through the administrative appeal, and through the lawsuit and fee application.

The district judge, in a colloquy with counsel, tried to sort out which hours were work on the lawsuit filed February 20, and which were for work on the 1988 negotiations and administrative appeal. He asked Cann's attorney, Mr. Dean, how many of the hours were for time put in prior to filing the lawsuit. Mr. Dean answered that "[t]he only time prior to that time was the administrative remedies with the defendant trust...." In his colloquy with the trust's attorney, the judge suggested that some work prior to filing the complaint, such as conferences with the client, would be part of the attorneys' fees for the action rather than the administrative appeal. The court ruled that no fees would be awarded for work done prior to January 1, 1990, 51 days prior to the filing of the action. Taken in the context of the judge's colloquy with counsel, this date appears to have been the district judge's approximation of when reasonable efforts on the lawsuit began, after completion of the administrative proceedings.

The judge also found that no multiplier was appropriate. He indicated awareness that Ninth Circuit authority provided for a multiplier, but considered it discretionary, and denied it. The award was the lodestar amount, that is, hours times rates, for each of the three lawyers who worked on the case, for all hours claimed beginning January 1, 1990.

## II. Analysis.

■ The ERISA civil enforcement provision provides for a discretionary award by the district court of a reasonable fee:

> In any action under this subchapter (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). This appeal raises two issues of statutory construction: (1) whether the word "action" limits fees to those incurred in the lawsuit, or allows awards of attorneys' fees incurred during administrative proceedings prior to suit; and (2) whether the word "reasonable" re-

quires a contingency multiplier in the circumstances of this case. We review the district court's award of attorneys' fees for abuse of discretion, except that questions of law are reviewed de novo. *Oviatt v. Pearce,* 954 F.2d 1470, 1481 (9th Cir.1992).

### A. Fees for Administrative Proceedings.

Cann's attorneys spent $5,953.12 worth of time trying to get the trust to pay Cann his pension through administrative proceedings. Cann could not file a lawsuit without exhausting his remedies before the trust, so there is no dispute about whether this time had to be spent. The dispute is limited to whether an award should have been made for it. Cann's attorney suggests on appeal that a few hours before January 1 were spent drafting the complaint which was filed February 20, but when the district judge asked him, he did not point this out. The colloquy with counsel makes it plain that the judge sought to pare off the administrative work from the work on the lawsuit, and we cannot say that the district judge's approximation, using January 1 as the cutoff date, was an abuse of discretion. Accordingly, no remand is necessary for additional findings on allocation of hours.

■ Cann's attorney argues that: (1) ERISA requires that employee benefit plans afford an opportunity for the participant whose claim is denied to obtain review by the fiduciary, under 29 U.S.C. § 1133(2); (2) exhaustion of internal administrative procedures is ordinarily required as a prerequisite for filing a civil action, under *Amato v. Bernard,* 618 F.2d 559 (9th Cir. 1980); and (3) pursuit of the administrative appeal was useful and necessary in the totality of his efforts on Cann's behalf. All these propositions are correct. Appellant would have us infer from them that the district judge abused his discretion by refusing to count those hours in calculating the award. The argument has force, but we cannot grant the relief unless the statute authorizes it. Without some statutory or other exception to the American rule, prevailing parties generally do not recover attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141

(1975). The judge cannot have abused his discretion by denying an award for attorneys' fees for the administrative proceeding unless he had discretion to make such an award. Although Cann argues that the district judge failed to give reasons for denying prelitigation attorneys' fees, no reasons for the exercise of discretion are required if the judge lacks discretionary authority.

We construe the statute as limiting the award to fees incurred in the litigation in court. Congress chose the words, "[i]n any action ... attorney's fee and costs of action...." The word "action" in its usual legal sense means "a suit brought in a court; a formal complaint within the jurisdiction of a court of law," and "includes all the formal proceedings in a court of justice attendant upon the demand of a right ... in such court...." *Black's Law Dictionary* 26 (5th ed. 1983). The word "action" generally designates only proceedings in court, not administrative proceedings even though necessary and valuable. *See Gates v. Columbia–Knickerbocker Trust Co.,* 233 F. 359, 362 (9th Cir.1916). The ERISA section on civil enforcement uses "action" in this way where it gives district courts exclusive jurisdiction "of civil actions under this subchapter," and refers to an "action" brought in a district court. 29 U.S.C. § 1132(e).

In contrast, the Supreme Court has construed "action or proceeding" in Title VII of the Civil Rights Act of 1964 as disjunctive, to provide for awards for administrative proceedings which are not court actions:

> The words of § [2000e–5 (k)] leave little doubt that fee awards are authorized for legal work done in "proceedings" other than court actions. Congress' use of the broadly inclusive disjunctive phrase "action or proceeding" indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings.

*New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 61, 100 S.Ct. 2024, 2029, 64 L.Ed.2d 723 (1980); *see also Webb v. Dyer* *County Board of Education,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (holding "action or proceeding" language authorizing attorney's fees under 42 U.S.C. § 1988 does not include optional administrative proceedings).

The *New York Gaslight* decision distinguishes another statute, more like the one before us, which permits attorneys fees for "any action." The Court found significance in the omission of "or proceeding," and construed the "any action" fee-shifting provision as referring only to "court actions":

> The pertinent language of § 204(b) is identical ... except that § 204(b) permits an award only with respect to "any action commenced pursuant to this title." The two provisions were enacted contemporaneously as parts of the Civil Rights Act of 1964. The omission of the words "or proceeding" from § 204(b) is understandable, since enforcement of Title II depends solely on court actions.... It is apparent, therefore, that the two fee provisions were carefully tailored to the enforcement scheme of each Title. It cannot be assumed that the words "or proceeding" in § 706(k) are mere surplusage.

*Id.,* 447 U.S. at 61, 100 S.Ct. at 2029–30.

As *New York Gaslight* suggests, Congress has, in various attorneys' fees statutes, specified which parts of the attorneys' work were subject to the English rule of fee shifting instead of the usual American rule. For example, the Internal Revenue Code provides for awards "[i]n any administrative or court proceeding," but sorts out "administrative costs" from "litigation costs" and treats them differently. 26 U.S.C. § 7430.

An examination of the statutory language, however, does not end our inquiry. In *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 559, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986) ("*Delaware Valley I*"), the Supreme Court interpreted statutory language similar to the ERISA fee provision, but rejected a literal analysis of "in any action ... may award costs of litigation" in the Clean Air Act, 42

U.S.C. § 7604(d). Likewise, in *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), the Court rejected a literal reading of "fees ... in any civil action" in the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), as applied to a social security claim. In both cases, the Court went beyond the apparent meaning of the words, to consider the purposes of the legislation in the context of the particular kinds of attorneys' efforts for which fee-shifting was sought.

We conclude that *Delaware Valley I* and *Hudson* are distinguishable, and in the ERISA context, we have no reason to depart from a literal construction. In both those cases, the attorneys' fees were incurred after the court action, not before it as here. In *Delaware Valley I*, the attorneys' fees were incurred in the course of enforcing through subsequent administrative proceedings a remedy ordered by the district court. Likewise, in *Sullivan v. Hudson*, the attorneys' fees were incurred in prosecuting a remand through an administrative agency after the claimant's attorney prevailed in the district court. In these circumstances, a court has already decided that the party is entitled to prevail, but in the pre-adjudication phase at issue before us, such a determination has not yet been made. Also, the administrative proceedings in those cases were before administrative agencies of government. In the case before us, although we have analogized the proceedings before the trust to administrative proceedings, *Amato v. Bernard*, 618 F.2d 559 (9th Cir.1980), they are actually part of a private, albeit regulated, claims process within the pension fund trust, enabling a claimant to obtain review of a denial within the trust before having to litigate. 29 U.S.C. § 1133(2); *see Amato*, 618 F.2d at 567.

In *Delaware Valley I*, the Court took note of the statutory purpose "to promote citizen enforcement of important public policies." 478 U.S. at 560, 106 S.Ct. at 3096. In *Hudson*, the court took note of the "unusual" statutory feature that the claimant could not obtain prevailing party status until the remand was completed, yet had to apply for attorney's fees within thirty days

of final judgment. 490 U.S. at 888, 109 S.Ct. at 2255. By contrast, in the ERISA context, the congressional purpose emphasized promotion of "the soundness and stability of plans with respect to adequate funds to pay promised benefits." 29 U.S.C. § 1001(a). This purpose might be undermined by awards which, by encouraging plans to pay questionable claims in order to avoid liability for attorneys' fees, could reduce their "soundness and stability." Since the validity of a particular claim is not always immediately obvious, plans may need to challenge those which the trustee in good faith believes are invalid without expanding its risk by a double or nothing bet on attorneys' fees. Also, some claimants and some plans may use informal internal review procedures, accomplished by nonlawyers, perhaps union or other employee representatives and plan representatives; a nonliteral reading of the statute which exposed the loser to the prevailing party's attorneys' fees might undermine such a process. The special reasons which supported a nonliteral interpretation of "actions" in *Delaware Valley I* and *Hudson* do not pertain, so we distinguish those cases and read the words more literally. The district court was therefore correct in denying fees for the administrative proceeding.

### B. The Contingency Multiplier.

Cann claims that the district court abused its discretion by denying him a contingency multiplier. He argues that the district court failed to state any reasons which might justify denial of a multiplier under *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("*Delaware Valley II*"), and *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1384 (9th Cir.1990). All the judge said was "[n]o multiplier will be used," and "I find no multiplier is appropriate," so we do not know why he chose not to apply a multiplier. *Cf. D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384–85 (9th Cir. 1990). Nevertheless, we do not have to

remand, because a multiplier would be barred.

Shortly after this case was submitted, the Supreme Court held that an award may not be enhanced to reflect the risk of non-recovery in a contingent-fee case under the attorneys' fees provisions of the Solid Waste Disposal Act, 42 U.S.C. § 6972(e), and the Clean Water Act, 33 U.S.C. § 1365(d). *City of Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *see also Gates v. Deukmejian,* 977 F.2d 1300, 1311 (9th Cir.1992) (holding contingency multipliers are not permitted under 42 U.S.C. § 1988); *Davis v. City and County of San Francisco,* 976 F.2d 1536, 1548–49 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (1993) (contingency of fee may not be considered in determining reasonable fee award in Title VII case). Although *Dague* did not deal with the ERISA attorneys' fees provision, we see no relevant distinction, because the statutory language is materially similar and the ratio decidendi fully applies.

The statute before us and the statutes construed in *Dague* authorize a court to award reasonable attorneys' fees. The dispute is about whether, to be reasonable, an attorney's fee must reflect an enhancement over hourly rates to reflect contingency of recovery. *Dague* explains that the statutory language before it was "similar to that of many other federal fee-shifting statutes," and "our case law construing what is a 'reasonable' fee applies uniformly to all of them." —— U.S. at ——, 112 S.Ct. at 2641. We understand this language to mean that we should apply *Dague* to the ERISA fee shifting statute. Thus, the award of attorneys' fees in this case could not properly have been enhanced for contingency.

Cann argues that we should not apply the rule of *Dague* retroactively to this case, based upon *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). But *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) holds that "it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule

has already done so." *Id.,* —— U.S. at ——, 111 S.Ct. at 2446. Our inquiry is whether the Supreme Court applied the rule it announced in *Dague* to the parties in that case. If so, the *James B. Beam* case requires us to apply the rule to this case. *Melton v. Moore,* 964 F.2d 880, 882 (9th Cir.1992). *Dague* did indeed apply its rule against multipliers to the parties in that case, so our inquiry is concluded. The district court did not abuse its discretion in failing to apply a multiplier, because it had no discretion to do so.

**AFFIRMED.**