**Frank LEE, Plaintiff–Appellee,**

**Equal Employment Opportunity Commission, Plaintiff–Intervenor–Appellee,**

v.

**CALIFORNIA BUTCHERS' PENSION TRUST FUND, Defendant–Appellant.**

**Nos. 96–16408, 96–16562 and 97–15272.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1997.

Decided Sept. 9, 1998.

Michael Nelson (argued), Victor J. Van Bourg (briefed and argued), Van Bourg, Weinburg, Roger & Rosenfeld, Oakland, California, for the defendant-appellant.

Daniel Feinberg (argued), Janet E. Brown (briefed), Sigman, Lewis & Feinberg, Oakland, California, for the plaintiff-appellee.

Paul D. Ramshaw, U.S. Equal Employment Opportunity Commission, Washington, D.C., for the plaintiff-intervenor-appellee.

Before: WIGGINS and KLEINFELD, Circuit Judges, and WILSON,* District Judge.

KLEINFELD, Circuit Judge.

This case involves whether a pension fund violated ERISA or the Age Discrimination in Employment Act by underpaying a pension. We affirm the district court decision that it did.

### Facts.

Mr. Lee worked at Safeway as a butcher for 30 years. He retired in 1992 at age 73.

---

* The Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

His pension was accumulated and paid by the California Butchers' Pension Trust Fund set up by several employers together with several labor unions, and was managed by their designees. The dispute that led to this appeal is over how much money Mr. Lee was entitled to be paid every month in his pension. He wanted to be paid as though he had worked 30 years and retired in 1992. Those were the facts. The pension fund insisted on paying him as though he had retired in 1990 instead of 1992, and then started working again, which was not true. The effect of the fund decision was to pay Mr. Lee $815.50 per month instead of $1,498.20. The difference was based on a section of the Internal Revenue Code misapplied by the trustees, as we explain below. The Internal Revenue Code requires pension plans to begin paying people their pensions after they attain age 70 1/2 whether they keep working or not.

The plan started paying Mr. Lee his pension in 1990 because he had reached age 70 1/2. A collective bargaining agreement increased pensions for people who retired beginning in 1992. When the 1992 increases came into effect, of course Mr. Lee wanted them calculated on all his years of service. But the plan did not pay him on the basis that he had worked almost 30 years. Instead it just applied the higher amounts to his two years of service following the 1990 beginning date of his distributions, as though he had only worked as a butcher covered by the plan for two years. So he got the pre-1992 calculation applied to almost all his years of work, and the post–1992 calculation only on his post–age–70 1/2 work.

Mr. Lee's lawyer initiated correspondence with the plan about the calculation in December of 1991, asking for a calculation of his pension showing what rates and years of service credit were used. The plan provided some information, but not the calculation. After repeated inquiry, Mr. Lee's lawyer was told that the plan deemed him to have retired April 1, 1990. In June of 1992, Mr. Lee's lawyer wrote a formal request for additional benefits, explaining why he thought the plan was incorrect, and why Mr. Lee was entitled to a pension based on the new rates applied to all of Mr. Lee's years of service. The letter claimed that the plan's method discriminated against Mr. Lee based on his age

(i.e., that he had turned 70 1/2 before the 1992 increase) and violated the plan provisions. Mr. Lee's lawyer carefully advised that the tax provision just meant that Mr. Lee had to start drawing his pension so he would start paying income tax on the money, not that he had to retire, at age 70 1/2. He stated that because Mr. Lee was not required to retire at age 70 1/2, and had not in fact retired, he could not be "deemed" to have retired. Four months later, the plan replied, conceding that the plan owed Mr. Lee more money for certain months, but not telling him how the plan calculated his years of service and monthly amounts.

After receiving this letter, Mr. Lee proceeded with an EEOC claim based on age discrimination. The EEOC made a determination that he had been discriminated against based on age, because, had he been younger when he retired, the plan would have used the higher rates to calculate his pension. Mr. Lee sued the pension fund in district court, the EEOC intervened on his side, and he won summary judgment on his age discrimination claim.

Mr. Lee also brought an ERISA claim against the pension fund. The district court stayed the ERISA claim to allow him to exhaust his appeal to the trustees, which he then tried to do. His lawyer submitted a written request for review, explaining in detail the calculation he thought proper under the plan, and why the plan's apparent method of calculation was incorrect. The plan's attorney wrote that, although he had been told that Mr. Lee was at a fishing cottage without a phone in Arkansas, he wanted Mr. Lee physically present at the hearing. He wrote that Mr. Lee might be asked whether he was aware of the plan's appeal procedures, if so why he did not use them, and whether "someone, other than an attorney, advised you to ignore or not to proceed under these appeal procedures." Mr. Lee's lawyer responded that the questions were irrelevant to whether the plan owed the money claimed, because the claim denial letter had not been specific enough to trigger the statutory requirement of an appeal within 60 days. His letter also said that Mr. Lee was 76 years old, poor, living in Arkansas, had

difficulty understanding phone conversations, and was recovering from eye surgery, so it would be a hardship for him personally to participate.

At the hearing, at which Mr. Lee appeared by counsel but not in person, Mr. Van Bourg on behalf of the plan repeatedly asked Mr. Lee's lawyer what Mr. Lee had said and what the lawyers had advised him regarding his appeal and personal appearance. Mr. Van Bourg insisted on the right to have Mr. Lee present because the trustees might have some questions for him, "it's a friendly procedure," and "you've built a wall between the trustees and the participant." Mr. Van Bourg conceded that there was nothing in the plan that required Mr. Lee to appear personally, but some of the union representatives expressed their feeling of being insulted by his not doing so. Mr. Van Bourg explained that customarily appellants appeared personally or by telephone so that the trustees could ask them questions.

No decision was issued by the trustees, so Mr. Lee's attorneys filed another summary judgment motion. The district judge held that under the plan, Mr. Lee was not required personally to appear, and that if the trustees had questions for him, they could send interrogatories or depose him. He gave the trustees another chance to make a decision, so that he could defer to it under the controlling standard of review. The trustees then denied the appeal on grounds that it was untimely, Mr. Lee had not appeared and answered questions satisfactorily, his attorney had not been sufficiently forthcoming, and the Internal Revenue Code provision about age 70 1/2 required the calculation the plan made. Lee moved again for summary judgment on his ERISA claim. This time the district court granted summary judgment, and awarded attorney fees. The plan appeals.

### Analysis.

**A. Applicability.**

■ The plan argues that the Age Discrimination in Employment Act does not apply to trusts, because the Act regulates the conduct only of other kinds of entities. The Act applies to "an employer, an employment agency, a labor organization, or any combination thereof":

> [I]t shall be unlawful for an employer, an employment agency, a labor organization, or any combination thereof to establish or maintain an employee pension plan which requires or permits—
>
> > (A) in the case of a defined benefit plan, the cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual, because of age....

29 U.S.C. § 623(i)(1). The trust fund argues that it is a trust, not an employer or labor organization, and if Congress had meant to prohibit age discrimination by trusts, it would have said so. It cites no cases for the proposition that trust funds are not covered by the statute, but says there are none that say that they are. Lee argues that a trust fund exercises power delegated by an employer over one of the terms of employment, so should be treated as an employer, citing *Carparts Distribution Ctr. v. Automotive Wholesaler's Assoc.*, 37 F.3d 12, 17 (1st Cir. 1994), *Spirt v. Teachers Ins. & Annuity Assoc.*, 691 F.2d 1054, 1063 (2d Cir.1982), *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406, *reinstated in relevant part*, 735 F.2d 23, 29 (1984). The EEOC argues that the trust is a "combination" under the statute, and argues that the phrase "or any combination thereof" occurs in the statute only in the context of the pension plan section, 29 U.S.C. § 623(i)(1).

The trust is correct that it is a separate entity, and is not an employer or union, nor is it a "combination" in the common law sense, such as a joint venture. *See* Restatement (Second) of Trusts §§ 2, 8. The trust was not Mr. Lee's employer in a common law sense, because it did not hire him to cut meat. It was not his union, because it did not negotiate on his behalf with Safeway. Nor was it the agent of either, because "an agency is not a trust," Restatement (Second) of Trusts § 8, nor is a trust an agent. *See* Restatement (Second) of Trusts § 200 comment b.

Nevertheless we find the EEOC argument the most persuasive. Pension plans are almost universally administered by trusts, and

most private sector employees who receive pensions get them as checks from trusts. Congress must have meant to regulate pension trusts when it made it "unlawful for an employer, an employment agency, a labor organization, or any combination thereof to establish or maintain an employee pension plan which requires or permits . . . reduction of the rate of an employee's benefit accrual, because of age." 29 U.S.C. § 623(i)(1)(A). Otherwise, the Act would regulate a vacuum. Also, Congress provided that the named entities shall not "maintain" a discriminatory plan, but only trustees "maintain" trusts, so Congress must have been speaking to the conduct of trusts. Trusts are what are traditionally and almost universally used to collect, hold and disburse the money for pension funds. The function of the term "or any combination thereof" in this statutory context is to embrace trusts established or maintained by employers and unions together. In a heavily unionized trade, often employers pay pension fund benefits to a trust administered by a joint board of union and management appointees.

To the extent that our circuit and others have dealt with similar or related statutory issues, their conclusions are consistent with this view. We and the Second Circuit have held that trusts established by a single employer are treated as employers for Title VII purposes, a different statute but with somewhat parallel purposes. *Norris v. Arizona Governing Committee*, 671 F.2d 330, 334 (9th Cir.1982), *rev'd in part on other grounds*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983); *Spirt v. Teachers Ins. & Annuity Assoc.*, 691 F.2d 1054, 1063 (2d Cir.1982), *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406, *reinstated in relevant part*, 735 F.2d 23, 29 (1984). The First Circuit has held that a trust established by an association of employers is an "employer" for purposes of the Americans With Disabilities Act. *Carparts Distribution Ctr. v. Automotive Wholesaler's Assoc.*, 37 F.3d 12, 17 (1st Cir.1994). Oddly, we have found no case which directly addresses how trusts are properly categorized under the ADEA. Notwithstanding Mr. Lee's argument to the contrary, *Yares* (*Yares v. Great Cleveland Pipefitting Training Fund*, 782 F.Supp. 68

(N.D.Ohio 1990)), *aff'd*, 929 F.2d 702 (6th Cir.1991) is not on point.

## B. Exhaustion.

The trust argues that the district court erred in granting relief to Mr. Lee, because he did not exhaust the appeal process within the trust that is a prerequisite to suit. The plan establishes that if the trustees deny a claim, they must do so within 90 days, and must "set forth the reasons therefor with specific reference to Plan provisions upon which the denial is based." The claimant then has 60 days to petition for review, and upon good cause the trustees will grant the petitioner a hearing. The trustees then have a deadline to decide. Failure to petition for review within 60 days or failure to appear at a hearing is a waiver of the claimant's right to review. Plan § 9.04(b). The plan had to conform to the ERISA requirements for adequate notice and opportunity for review:

> In accordance with regulations by the Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review. . . .

29 U.S.C. § 1133. The regulations reiterate that the reasons given by the plan for denial must be "specific" and the references to plan provisions upon which the denial is based must be "specific":

> (f) *Content of notice.* A plan administrator . . . shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
>
> (1) The specific reason or reasons for the denial;
>
> (2) Specific reference to pertinent plan provisions on which the denial is based;
>
> (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation

of why such material or information is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f).

The plan missed its 90–day deadline to deny Mr. Lee's claim, and it breached its duty to give him specific reasons and cite specific sections of the plan upon which the denial was based. The plan did not respond to Mr. Lee's June 9, 1992 claim until October 15, about a month late. In response to his eight-page detailed letter making his claim, the Plan said no more than that benefits had to be paid "in accordance with the Plan provisions of Sections 9.05 and 9.10(3)c":

> In view of the correspondence received from your attorney which was referred to Fund Co–Counsel, we have been advised to inform you that the Plan must pay the benefits to you in accordance with the Plan provisions of Sections 9.05 and 9.10(3)c.

Section 9.05 says that a person retires when he attains normal retirement age or terminates his employment and retires, whichever comes later, so it explained nothing about why Mr. Lee's claim was rejected. The other section to which the Plan referred in its denial, § 9.10(3)c, does not exist at all. Perhaps this was a typographical error, meant to refer to § 9.10(c), but that refers to resumption of payments to a pensioner whose payments had been suspended when he became employed after retiring. That has no apparent application to Mr. Lee, because his payments were not suspended and he did not retire. Thus the plan did not give Mr. Lee "specific" reasons for denying his claim, did not cite the "specific reference" to pertinent plan provision upon which the denial was based, and did not give him an explanation "written in a manner calculated to be understood" by Mr. Lee as an explanation of why his claim was denied.

The Plan broke its own rules and the ERISA requirements in virtually every respect regarding procedure for denial. Conclusory statements which do not give reasons for denial do not satisfy the requirement of specificity. Other circuits have treated similarly conclusory statements of reasons to be inadequate under ERISA. *See Brumm v.* *Bert Bell NFL Retirement Plan,* 995 F.2d 1433, 1436–37 (8th Cir.1993); *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 693–94 (7th Cir.1992). By breaking its own rules in a substantial manner, the plan made it impossible for Mr. Lee to know exactly what was at issue between himself and the plan, and to obtain timely internal review.

Likewise, with respect to attendance at the hearing, it is plain from the plan document that the hearing is offered to the petitioner, not required of him. There might be a circumstance, such as the need for factual inquiry, where the petitioner's presence in person or by telephone was appropriate, but no such need was demonstrated here. The plan conceded that its documents did not require Mr. Lee personally to appear. The trustees' remarks suggested that such questions as might have been addressed may have sought information to which the trustees were not entitled, or put undue pressure on Mr. Lee.

The plan itself thwarted proper exhaustion of procedures for review by the trustees, so Mr. Lee was relieved from following them. The late, inadequate denial of claims, and the trustees' improper refusal to proceed with review unless Mr. Lee came in person, relieved Mr. Lee of the obligation to exhaust the trust's internal review procedure before filing suit. *Cf. White v. Jacobs Engineering Group,* 896 F.2d 344, 350 (9th Cir.1989). The reason they relieved him of the obligation is that the violations were so substantial as to deprive Mr. Lee of a fair opportunity to obtain timely review of the specific matters in dispute.

C. Plan error.

■ The trustees argue that they correctly denied Mr. Lee's claim, because the Internal Revenue Code required them to distribute his entire interest when he reached age 70 1/2. Congress amended the Internal Revenue Code in 1986 to require pension plans to begin distributing benefits when the pensioner reaches age 70 1/2. *See* 26 U.S.C. § 401(a)(9)(A)(ii) (1990). The Fund read this to mean that a person must be treated as having retired at age 70 1/2. They called the employee's status "legally retired" and distinguished it from "physically retired."

There are no words in the statute or plan to support what the trustees did. Mr. Lee was not "legally" or "physically" retired in 1990. He was working at Safeway as a butcher. The tax statute says that the money to which the employee is entitled must be "distributed" beginning April 1 of the calendar year following the calendar year when the employee reached age 70 1/2:

(A) In general. A trust shall not constitute a qualified trust under this subsection unless the plan provides that the entire interest of each employee—

(ii) will be distributed, beginning not later than the required beginning date....

. . .

(C) Required beginning date. For purposes of this paragraph, the term "required beginning date" means April 1 of the calendar year following the calendar year in which the employee attains the age 70 1/2....

26 U.S.C. § 401(a)(9). This provision limits use of pension funds as tax shelters beyond age 70 1/2, but does not say a word about requiring people to quit working or authorizing plans to deprive them of increases and accruals following age 70 1/2 when they are still working. The law does not say that the employee has to be retired, just that his money must be "distributed," that is, paid to him, beginning by the specified date. Mr. Lee was born January 30, 1919, so he turned 70 1/2 on June 30 1989, and his distribution had to begin by April 1, 1990.

A change in the pension plan after April 1, 1990 made the fiction that Mr. Lee was "legally retired" cost him almost half his pension. Effective for retirements after January 1, 1992, the pension benefits calculation was changed to much higher amounts. Employees who retired before that date were entitled to $25 per month for each year of credited work before July 1, 1986, and $36 per month for each year subsequent. But employees who retired on January 1, 1992 or later were entitled to $40.92 monthly for each of their first 10 years, and $54.54 for additional years.

No possible reading of the plan language could "deem" Mr. Lee to have retired in 1990. The plan says that someone who has worked at least 10 years and reached age 65 is "deemed retired" when he is no longer working more than a specified low number of hours:

To be deemed retired after he has attained Normal Retirement Age, a Pensioner must refrain from employment of 40 hours or more during any calendar month, or during each four- or five-week period ending in a calendar month....

Plan § 9.08(b). Thus, under the Plan, Lee was to be "deemed retired" after he quit working in 1992, at which time he was entitled to the increased benefits available to all employees who stopped working after January 1, 1992. The Fund's denial of the increase to Mr. Lee was therefore an abuse of discretion. The plan amendment does not make an exception for pensioners still working but whose distribution has begun.

D. Attorney fees.

■ The plan also argues that attorneys' fees should not have been awarded under the Age Discrimination in Employment Act because the Act does not apply. That argument fails because, as we explain above, the Act does apply to pension trusts. The plan argues that attorneys' fees should not have been awarded on Mr. Lee's ERISA claim, because the trustees acted in good faith in interpreting the Internal Revenue Code provision discussed above, so attorneys' fees could not properly be awarded under *Cann v. Carpenters' Pension Trust Fund,* 989 F.2d 313, 316 (9th Cir.1993).

*Cann* does not stand for the proposition for which the plan cites it. The case holds that attorneys' fees under ERISA are limited to "litigation in court," as opposed to "internal administrative proceedings." *Id.* at 315–16. It does not speak at all to the issue of whether attorneys' fees should be denied where the trustees err in good faith. The plan does not argue that fees were erroneously claimed for work during the administrative process, so we have no occasion to apply *Cann.* The statute says that "the court in its discretion may allow a reasonable attorney's fee." 29 U.S.C. § 1132(g)(1). No argument has been made to show that the

district court abused its discretion by awarding Lee his attorneys' fees in this case.

AFFIRMED.