**J. Scott GROOMAN,**

v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.**

**No. WMN–01–521.**

United States District Court, D. Maryland.

April 22, 2002.

A.2d at 453. Whether or not he has done so the Court need not decide, since the claim fails on other grounds.

Jennifer M. Horn, Venable Baetjer and
Howard, LLP, Baltimore, MD, John H.

Zink, III, Venable Baetjer and Howard, Towson, MD, for J. Scott Grooman.

J. Eric Paltell, Jonathan S Nash, Piper Rudnick, LLP, Baltimore, MD, Stephen R. Mysliwiec, Piper Rudnick, LLP, Washington, DC, for Northwestern Mutual Life Insurance Company.

## MEMORANDUM

NICKERSON, District Judge.

Before the Court are cross motions for summary judgment. Paper Nos. 13 (Defendant's) and 14 (Plaintiff's).[1] The motions are fully briefed. Upon a review of the motions and the applicable case law, the Court determines that no hearing is necessary and that both motions will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Plaintiff brought this action seeking additional long term disability (LTD) benefits. The case was originally filed in the state court but was removed here by Defendant on the basis that Plaintiff's state law claims were preempted under the Employee Retirement Income Security Act (ERISA).

There is much about Plaintiff's benefit claims upon which the parties now appear to agree. First, Plaintiff apparently concedes that this action is governed by ERISA. Second, it is now undisputed that Plaintiff is permanently and totally disabled and entitled to benefits under the long term disability policy issued by Defendant. Plaintiff suffered a cervical spinal injury in June of 1995. As a result of the limitations this injury imposed on Plaintiff, he is prevented from performing any substantial gainful employment, and has been since June of 1995.

Third, although the parties sharply dispute where to place the blame for the delay, there is also no dispute that it took an inordinately long time, more than four years, for Defendant to recognize and acknowledge that Plaintiff was permanently and totally disabled. Plaintiff first submitted a claim for benefits in January 1996. Defendant initially denied the claim on December 17, 1996, asserting that the claim was excluded under a preexisting condition clause in the policy. Defendant re-reviewed, but re-affirmed, this denial in a second decision issued on April 15, 1997. After Defendant issued that second decision, Plaintiff's counsel informed Defendant, on or about May 21, 1997, that Plaintiff had previously been covered under a policy issued by another insurance carrier, thus allowing Plaintiff to fall within a "Continuity of Coverage" exception to the preexisting condition exclusion.

Before Defendant reached a decision on the continuity of coverage exception, however, Plaintiff filed a lawsuit in Maryland state court on April 7, 1998. As it did with the instant action, Defendant removed that action here on the basis of ERISA preemption. Civil Action No. WMN–98–1968. While that first action was pending before this Court, on June 5, 1998, Defendant made the determination that Plaintiff was disabled from June 1995, through July 30, 1996, and forwarded a check for more than $45,000. In October 1998, Defendant conceded that Plaintiff had been disabled at least through October 1998, and paid arrearages of over $165,000.

In February 1999, the parties settled the previous lawsuit. The parties agreed that Plaintiff would dismiss the suit, without prejudice, and Defendant would consider

---

1. Also before the Court is Defendant's motion to strike Plaintiff's jury demand. Paper No. 12. Given that the outstanding issues will be resolved by motion, the motion to strike will be denied as moot.

additional information in support of Plaintiff's claim.

In July 1999, Defendant paid Plaintiff approximately $55,000 in additional benefits for the period November 1, 1998 through July 31, 1999. On February 1, 2000, after reviewing additional information, Defendant determined that Plaintiff was no longer eligible for benefits after July 31, 1999. Defendant based this determination on two independent medical exams that showed that Plaintiff was able to perform sedentary duties, and on information from Plaintiff's former employer that indicated that Plaintiff's position as Vice President of Technical Services was basically sedentary in nature.

In the letter informing Plaintiff of the decision, Defendant invited Plaintiff to submit additional information should he wish Defendant to further review the claim. In March of 2000, Plaintiff submitted affidavits from his former business partners indicating that Plaintiff's position had involved physical duties, such as lifting computers, as well as sedentary work. In April of 2000, Plaintiff submitted to Defendant a decision of an Administrative Law Judge for the Social Security Administration (SSA) finding that Plaintiff was totally disabled. This finding was based upon the testimony of a vocational expert who opined that Plaintiff's condition prevented him from performing even sedentary work. After receipt of this information, Defendant reversed its February 2000 determination and on June 6, 2000, reinstated Plaintiff's benefits as of August 1, 1999.

Still unresolved, however, is the precise measure of the benefits due Plaintiff. Plaintiff filed the instant action seeking a declaratory judgment that would resolve those controversies. While the issues to be resolved were somewhat broader at the inception of this litigation than they are now, the following issues remain:

1) Whether Defendant is entitled to reduce Plaintiff's benefits by the amount of Social Security disability (SSD) benefits that Plaintiff was eligible to receive, regardless of whether Plaintiff actually received those benefits;

2) Whether Plaintiff is entitled to attorney's fees incurred in the course of the previous litigation against Defendant; and

3) Whether Plaintiff is entitled to interest on delayed benefits and, if so, at what rate.

The Court will address these issues, *seriatim*, providing additional factual background relevant to these specific issues, as needed.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment only if it can show that there exists no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Blue Ridge Ins. Co. v. Puig*, 64 F.Supp.2d 514 (D.Md.1999) (citing, *inter alia*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

When both parties file motions for summary judgment, the court applies the same standards of review. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment") (emphasis omitted), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v.*

*Hartford Acc. and Indem. Co.*, 627 F.Supp. 170, 172 (D.Md.1985) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* 2d § 2720 (2d ed.1993)).

## III. DISCUSSION

### A. Standard of Review

■ Defendant does not dispute that, because of the inherent conflict of interest that exists when an insurance company acts both as the plan administrator and the payer of claims, its determinations of benefits are subject to review under a modified abuse of discretion standard. Under the unmodified standard of review, a reviewing court will not disturb an administrator's decision if it is reasonable, even if the court would have reached a different conclusion. Where there is a conflict of interest, however, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir.1999). This modified standard applies on a case-by-case basis, deviating from the usual abuse of discretion standard only to the extent necessary to counteract any influence unduly resulting from the conflict. *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir.1997). Under this standard, Defendant's decision will be upheld as reasonable only "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis*, 126 F.3d at 232 (citations omitted).

### B. Defendant's Deduction for Non-Received SSD Benefits

In its June 5, 1998 letter to Plaintiff informing him that he was entitled to benefits through July 30, 1996, Defendant advised Plaintiff that he should apply for SSD benefits as soon as possible. Plaintiff did so on June 12, 1998. On January 11, 1999, the SSA denied Plaintiff's application, finding that his condition did not keep him from working. Plaintiff sought reconsideration of that denial, but the SSA reaffirmed its decision on May 17, 1999. As noted above, however, in April 2000, an Administrative Law Judge reversed the decision of the SSA and found that Plaintiff was disabled and eligible for SSD benefits.

In June 2000, the SSA paid Plaintiff $39,572.88 for benefits due him from June 1997 through May 2000. The SSA paid no benefits for the period of time prior to June 1997 because, by law, the SSA can pay benefits no earlier than 12 months before the date of application and Plaintiff did not apply for benefits until June 1998. It is undisputed, however, that had Plaintiff applied for SSD benefits sooner, he would have been eligible to receive benefits from December 1, 1995.[2]

On June 6, 2000, when Defendant informed Plaintiff that it was reinstating his benefits, Defendant also requested information about his application for SSD benefits. Based upon the information provided, Defendant recalculated Plaintiff's benefits, taking into account not only the SSD benefits Plaintiff actually received, but those that he would have received had he applied earlier. In addition, although plaintiff had not responded to Defendant's requests for information regarding payments of Social Security benefits received by Plaintiff's dependants, Defendant estimated what it believed them to be and included those payments as an offset in the recalculation of benefits due and owing. In Defendant's view, the combined payments from the

---

**2.** An individual must be disabled for five full months before SSD benefits are payable by the SSA.

SSA resulted in an overpayment by Defendant of disability payments in the amount of $91,773.46 through July 1, 1999. To recoup that overpayment, Defendant withheld any further benefit payments until June 2001, at which time, payments resumed.

Defendant believes it is entitled to offset both received and non-received SSD benefits, based upon the plain language of its policy. The policy provides that Defendant can reduce LTD by "Other Income." Policy at 3 (defining "LTD Benefit" as "Your Maximum Benefit minus your Other Income"). Other Income is defined as including the "Social Security Offset," which is in turn defined as "[a]ny amount you or your dependents receive *or are eligible to receive* because of your disability or retirement under the Federal Social Security Act" and "[b]enefits your spouse or children receive *or are eligible to receive* because of your disability." *Id.* (emphasis added).

The policy also creates a duty on the part of the disabled insured to pursue other income:

> **Your Duty to Pursue Other Income.**
> You must pursue Other Income for which you may be eligible. The Company may ask for written documentation of your pursuit of Other Income. You must provide satisfactory documentation within 60 days after the Company mails you a request. Otherwise, the Company may reduce your benefit by the amount the Company estimates you would be eligible to receive upon proper pursuit of the Other Income. You must notify the

Company of the amount of the Other Income when it is approved.

*Id.* at 14, § 3.3 Rules for Other Income.

■■ Plaintiff does not contest Defendant's right to reduce his LTD benefits by the amount he actually received from the SSA. He strenuously challenges, however, Defendant's right to offset the non-received SSD benefits.[3] Plaintiff presents two arguments: first, that Defendant waived any right to this offset when it settled the prior litigation; and second, that the language of the policy is at most ambiguous as to whether such an offset should be allowed.

Plaintiff's waiver argument is based upon letters exchanged by counsel as the parties sought to finalize the settlement of the prior lawsuit. Those letters identified four issues as the "remaining issues between Scott Grooman and Northwestern" and set out the agreed upon procedures for resolving those issues.[4] *See* Complaint Exhs. 11, 12. Plaintiff now argues that, because those agreed upon "remaining issues" did not include Defendant's right to offset non-received SSD benefits, Defendant forever waived the right to assert its entitlement to that offset. Plaintiff notes that prior to the settlement, Defendant "had paid benefits to Mr. Grooman on three occasions without reference to any purported entitlement to offset phantom payments from social security (that Mr. Grooman never received)—and without any deduction from projected social security benefits." Plaintiff's Reply Memo. at 3.

The Court finds no merit in Plaintiff's waiver argument. The identification by

---

3. These eligible but non-received benefits amount to approximately $25,000.

4. Those issues were: 1) whether, and to what extent Plaintiff remains disabled after October 31, 1998; 2) whether Plaintiff is entitled to attorney's fees related to that litigation; 3)

whether Plaintiff is entitled to interest on benefits previously paid; and 4) whether payments received by Plaintiff from his former employer after his termination of employment would qualify as severance pay and thus be credited against disability benefits.

the parties of certain issues that had already arisen and remained unresolved was no assurance that other issues of dispute might not arise in the future. No such assurance is expressed in the "settlement agreement."[5] Furthermore, the Court finds no implication of an agreement regarding SSD offsets from the fact that Defendant made payments without reference to these potential offsets. The Court notes that, at the time these payments were made, the SSA had yet to find Plaintiff entitled to any benefits.

The Court also notes that the lack of merit in Plaintiff's waiver argument is further demonstrated by positions he has taken on other issues in these pleadings. For example, Plaintiff does not dispute Defendant's right to offset SSD benefits that he did receive, even though that issue was not identified in the "settlement agreement" and Defendant first asserted this right at the same time as it asserted the right to offset non-received benefits. In addition, Plaintiff has taken the position, apparently for the first time in the briefing of these motions, that he is entitled to a Consumer Price Index (CPI) Adjustment in his benefits. Plaintiff asserts this right, despite the fact that payments were made prior to the settlement agreement without incorporating this adjustment and, the fact that the settlement agreement is silent as to this issue.[6] The Court finds no meaningful difference between Defendant's assertion of entitlement to a setoff for non-received SSD benefits and Plaintiff's assertion of a CPI adjustment. Quite simply, neither are precluded by the settlement of the prior lawsuit.

Nor does the Court find any merit to Plaintiff's claim that the language of the policy is somehow ambiguous as to the right to offset benefits to which the insured was entitled, regardless of whether or not they were received. "Other Income" is clearly defined as "[a]ny amount you or your dependants receive *or are eligible to receive*." Policy at 3. Plaintiff does not dispute that he would have been eligible for the benefit at issue had he applied.

For these reasons, the Court finds that Defendant is entitled to offset for non-received, as well as received, SSD benefits.

### C. Plaintiff's Entitlement to Attorney's Fees Incurred in Previous Litigation

Section 502(g) of ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). The decision to award fees is "completely within the discretion of the district court." *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1028 (4th Cir.1993) (en banc). In this circuit, the following factors are considered in guiding that discretion:

1) degree of the offending parties' culpability or bad faith;

2) ability of opposing parties to satisfy an award of attorneys' fees;

3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

---

**5.** As Defendant notes, its counsel requested on two occasions, in writing, that Plaintiff's counsel memorialize the settlement agreement. Plaintiff's counsel, for whatever reason, elected not to do so.

**6.** Defendant does not contest Plaintiff's right to this adjustment.

5) the relative merits of the parties' positions.

*Id.* at 1029. These factors provide "general guidelines," not a "rigid test," and not all of the factors will be relevant in every action. *Id.* In determining whether fees should be awarded, the court should also consider the remedial purposes of ERISA, *i.e.,* to protect employees' rights and to secure effective access to federal courts. *Id.* at 1030; *Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210, 1218 (4th Cir.1990).

 Plaintiff is seeking close to $50,000 in attorney's fees incurred "from the time he filed his first lawsuit in April 1998 through the present." Plaintiff's Motion at 24. After reviewing this request, the Court concludes that the award of fees is not warranted.

First and foremost, the Court agrees with Defendant that Plaintiff's filing of the previous suit was premature and that the award of the requested fees would be inconsistent with the general principle that attorney's fees should not be awarded during the administrative claims process. *See, Peterson v. Continental Casualty Co.,* 282 F.3d 112 (2nd Cir.2002); *Anderson v. Procter & Gamble Co.,* 220 F.3d 449 (6th Cir.2000); *Cann v. Carpenters' Pension Trust Fund,* 989 F.2d 313 (9th Cir.1993). The Ninth Circuit in *Cann* explained the reasoning for this limitation on the award of attorney's fees:

> [I]n the ERISA context, the congressional purpose emphasized promotion of "the soundness and stability of plans with respect to adequate funds to pay promised benefits." 29 U.S.C. § 1001(a). This purpose might be undermined by [attorney's fee] awards which, by encouraging plans to pay questionable claims in order to avoid liability for attorneys' fees, could reduce their "soundness and stability." Since the validity of a particular claim is not

always immediately obvious, plans may need to challenge those which the trustee in good faith believes are invalid without expanding its risk by a double or nothing bet on attorneys' fees. Also, some claimants and some plans may use informal internal review procedures, accomplished by nonlawyers, perhaps union or other employee representatives and plan representatives; a nonliteral reading of the statute which exposed the loser to the prevailing party's attorneys' fees might undermine such a process.

989 F.2d at 317.

Here, the Court finds that the administrative claims process was obviously still ongoing when Plaintiff filed the first suit. It is true that Defendant initially denied Plaintiff's claim on the basis of a pre-existing condition and issued a letter on April 15, 1997, stating that Plaintiff had "exhausted the administrative review process provided under the group policy." Def.Exh. A–3. Plaintiff relies exclusively on this letter in asserting that the claim investigation process was no longer ongoing. One month later, however, in May 1997, Plaintiff sent Defendant the previous policy, raising again the possibility of coverage by invoking the continuity of coverage clause. Plaintiff clearly understood that the investigation had begun anew, as Defendant sent Plaintiff's counsel a letter on June 19, 1997, indicating that Plaintiff's "LTD file is being reviewed in light of this new information." Complaint Exh. 5., and in November 1997, Plaintiff's counsel offered to assist Defendant in obtaining the information that Defendant needed from Plaintiff's former employee in order to determine the claim. Aff. of Laurens Dronkers at ¶ 6. That information was finally provided to Defendant on April 16, 1998, just five days before Plaintiff filed the first lawsuit.

Undeniably, it was taking a long time for Defendant to reach a determination of benefits. The cause of the delay, in the Court's view, however, does not rest exclusively, or even substantially, on Defendant. Plaintiff did not inform Defendant of the existence of the previous policy until almost 16 months after his initial application. Plaintiff's employer took 5 months to answer Defendant's request for information. It appears that Plaintiff or his counsel did not even inquire as to the status of the claim from November 1997 to April 1998, when it filed suit.

Allowing insureds to circumvent the claims administration process and commence a lawsuit whenever they become impatient with the process would not serve the interests of promoting the soundness and stability of ERISA plans. Undeniably, there are circumstances where the plan administrator is so dilatory that it would be inequitable to require the claimant to wait any longer before proceeding to court. The Court finds that those circumstances are not present here.

For these reasons, the Court concludes that Plaintiff is not entitled to attorney's fees related to the previous litigation.

### D. Interest on Delayed Payments.

 To the extent that payments to Plaintiff of benefits to which he was entitled were delayed,[7] the Court finds that he is entitled to the payment of interest, at the pre-judgment interest rate specified in 28 U.S.C. § 1961. *See Holmes v. Pension Plan Of Bethlehem Steel*, 213 F.3d 124, 131 (3rd Cir.2000) (affirming district court's award of interest at pre-judgment interest rate, holding that interest on delayed ERISA benefits is an equitable remedy left to the discretion of the trial court and is "presumptively appropriate"). The award of interest at this rate is most con-

sistent with the goal of fully compensating Plaintiff and preventing the unjust enrichment of Defendant.

### IV. CONCLUSION

For the reasons stated above, the Court finds that: 1) Plaintiff's benefit must be offset by the SSD benefits to which he was entitled, regardless of whether he received them; 2) Plaintiff is not entitled to attorney's fees related to the litigation of the prior lawsuit; and 3) Plaintiff is entitled to interest, at the prejudgment rate specified in 28 U.S.C. § 1961, for any delay in his receipt of benefits. Because the issue of CPI adjustment has never been addressed by the plan administrator, however, the Court will remand to the plan for recalculation of benefits consistent with this opinion. A separate order will issue.

tent to which Plaintiff's benefits were actually delayed is unclear.

---

**7.** After the inclusion of the SSD offsets and CPI adjustment to Plaintiff's benefits, the ex-