**Nettie JONES Plaintiff**

v.

**USABLE LIFE Defendant**

**No. CIV.A. 3:05CV165LS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

May 2, 2006.

Lisa M. Ross, for the Plaintiff.

Steven H. Begley and Clint D. Vanderver, for the Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on motion of defendant USAble Life for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Nettie Jones has responded in opposition. The court, having considered the memoranda and submissions of the parties, concludes that defendant's motion should be granted.

Plaintiff filed this suit against USAble Life,[1] her long-term disability insurance carrier, seeking to recover compensatory and punitive damages based on her allegation that defendant wrongfully reduced her monthly disability payments from $440 per month to $44 per month based on an offset for estimated social security benefits, despite the fact that when the reduction was made, she had not yet been approved for social security benefits.[2] She contends that defendant's reduction of benefits in this manner violated the insurance policy, or alternatively, that if this was permissible under the policy, the policy itself violates the Social Security Act's "anti-assignment" provision. In its present motion for summary judgment, defendant contends that its reduction of plaintiff's benefits was proper inasmuch as plaintiff's disability policy expressly provides for such a reduction of benefits in anticipation of social security benefits. In the alternative, it seeks summary judgment with respect to plaintiff's claim for punitive damages.

On August 24, 1998, Jones, as an employee of the Canton School District, obtained a long-term disability policy with USAble Life, which provided for a disability benefit of $440 per month. Approximately four years later, in February 2002, Jones left her job with the Canton School District because of various medical problems. On May 2, 2002, she made a claim for disability benefits under the policy, and within two weeks received a check from defendant for $440. On June 2, 2002, Jones completed defendant's "Long Term Disability Update Form" in which she represented that she had applied for social security benefits, had been denied, and was currently appealing that decision. On June 21, 2002, USAble Life sent plaintiff a letter informing her that pursuant to the terms of the policy, her monthly benefit would be offset, or reduced, by the amount of social security benefits it estimated she may be entitled to receive. Defendant advised plaintiff that it would pay her full disability benefits of $440 for five months, at which time it would reduce her monthly

---

1. The case was originally filed in the Circuit Court of Madison County, Mississippi, but was removed by defendant based on diversity jurisdiction.

2. Although her complaint includes causes of action for breach of contract, violation of duty of good faith and fair dealing, self-dealing, fraud, misrepresentation, anticipatory breach of contract, breach of fiduciary duty, negligence and conversion, all these claims are based on the same basic allegation that defendant wrongfully reduced her disability payments based on social security benefits that she had neither received nor been awarded.

benefit to $44 per month, the minimum monthly benefit provided by the policy, based on its estimate that she may be entitled to $515 per month in social security benefits. Alternatively, defendant offered to extend payments of $440 per month for eight months, or until November 2002, at which time payments would then drop to $44 per month, with the understanding that she would be required to repay any overpayment.[3] Jones selected the second option, and returned the signed form to USAble Life.

In August 2003, Jones contacted defendant by telephone to inquire about receiving the full benefit amount of $440 per month. Defendant responded in writing, again informing her that it had reviewed her claim and would continue to offset her benefits for estimated social security benefits until she received a hearing decision. USAble Life assured plaintiff that once a final decision was made by the Social Security Administration, it would review her claim "to determine if any adjustments are necessary." In August 2005, a final determination was made in plaintiff's favor by the Social Security Administration, awarding her monthly benefits in an amount which actually exceeded defendant's estimate, and paying a lump-sum for benefits dating to the onset of her disability.[4] Throughout all this time, plaintiff received, and presumably continues to receive, $44 per month from USAble Life.

Defendant insists that it acted in accordance with its policy provisions, as set forth in the certificate of coverage issued to plaintiff. That certificate of coverage states:

> For the purpose of this provision the Company will estimate an amount equal to the amount you and your dependents would receive under the United States Social Security Act. This amount will reduce your monthly benefit beginning after five full months of disability. This reduction will continue unless you submit proof to the Company that you have applied for benefits under such Act but you are not eligible to receive such benefits after completing the application and appeals process with the Social Security Administration. Any lump sum payment received by you shall be deducted immediately from your monthly disability benefits.

Defendant correctly maintains that this provision authorized it to offset its benefit payments under the policy by the amount of estimated social security benefits to which the insured may be entitled, unless the insured submits proof that he or she has applied for benefits, that his or her claim has been denied *and* that he or she has completed the appeals process.

Here, it is undisputed that at the time defendant reduced plaintiff's benefits pursuant to the policy's social security offset provision, while plaintiff's claim for social security benefits had been denied, a fact of which she repeatedly made USAble Life aware, plaintiff was still pursuing her appeal of that decision. Thus she obviously had not completed the appeals process. For this reason, therefore, as defendant explained in its August 2003 letter to

---

3. An overpayment would presumably result if an insured such as plaintiff were ultimately determined to be entitled to social security benefits dating back to the initial date of disability and was awarded a lump sum payment at the time of that determination.

4. In response to plaintiff's complaint, defendant filed a counterclaim against Jones, claiming that based on her actual social security award, she was overpaid benefits in the amount of $446.70. Defendant seeks to offset this amount from any future benefits owed to plaintiff.

plaintiff, defendant continued to offset her policy benefits based on estimated social security benefits she might receive if her appeal was successful.

■ For her part, plaintiff does not deny that the certificate of coverage provides for a reduction for estimated social security benefits yet to be awarded. She takes the position, though, that she did not receive a certificate of coverage or a copy of the group policy and was not otherwise made aware of this provision. She contends that her understanding of the policy terms was based on insurance agent Keith Smith's alleged explanation that the policy would pay her $440 per month if she became disabled, and the information contained in the brochure supplied by Smith, which provides, in part,

> [I]f you are covered under the United States Social Security Act, you will be considered to be receiving periodic cash payments under such Act, in an amount equal to the amount you and your dependents would receive were they receiving such payments, unless you submit proof to our Company that such payments have been applied for but are not payable. Any lump sum payment received by you shall be deducted immediately from monthly disability income benefits payable.[5]

In *Monaghan v. Adkins* the Fifth Circuit stated,

> Mississippi law establishes that where notice is sent to the insured via mail, "[t]here is a presumption that mail deposited, postage prepaid and properly addressed is timely delivered to the person addressed." Proof of mailing operates to establish a rebuttable presumption that notice reached its intended destination (that is, the insured's last

known address). An insured who maintains he never received such notice may rebut the presumption by presenting "countervailing evidence of sufficient weight to rebut the presumption that it was received." "But mere denial of receipt is insufficient to create a triable issue of fact."

117 Fed.Appx. 923, 925 (5th Cir.2004) (citations omitted). Although the issue here is not a party's alleged non-receipt of a notice of cancellation, but rather is plaintiff's claim that she never received the certificate of coverage, yet in the court's view, the presumption is the same in either case.

Here, in response to plaintiff's claim that she never received the certificate of coverage, defendant has submitted the requisite proof of mailing, namely, the declaration of its employee, Connie Brown Phillips, who explains that USAble Life's records confirm that Jones was mailed a welcome letter and the certificate of coverage on September 2, 1998 to her home address in Canton, Mississippi. Copies of the welcome letter and certificate of coverage, both addressed to plaintiff, are included with Phillips' declaration, in which she attests that these documents were prepared and maintained in accordance with defendant's regular practice in the usual course of business. Phillips insists that the mailing address on these documents is correct, noting that all subsequent correspondence and disability checks were sent to that same address, including forms that Jones completed, signed and returned. USAble life contends that, under the law, it has met its burden to show that the certificate of coverage was provided to plaintiff, and the court agrees. Accordingly, plaintiff is presumed to have received the document

---

5. Notably, the only appreciable difference between the brochure and the certificate of coverage is that the certificate of coverage explicitly mentions the appeals process.

and is bound by its terms,[6] which expressly permitted the offset of which plaintiff complains herein. As such, plaintiff's claims for breach of contract, violation of duty of good faith and fair dealing, self-dealing, anticipatory breach of contract, breach of fiduciary duty, negligence and conversion, all of which are rooted in her charge that USAble should have paid her full benefits during the pendency of her application for social security disability benefits and her appeal, are due to be dismissed.

■ Plaintiff's fraud and misrepresentation claims are likewise to be dismissed. These claims are based on plaintiff's assertion that agent Smith misrepresented that the policy would pay her $440 per month if she became disabled, or perhaps more accurately, that he failed to disclose that provision of the policy which allowed for an anticipatory offset. Defendant is correct in its contention that as a matter of law, plaintiff cannot prevail on this claim because she could not reasonably have relied on this alleged representation given that the policy documents, including the brochure she received from Smith and the certificate of coverage, plainly provide for such an offset. As such, the court agrees that plaintiff cannot establish the necessary elements to sustain her claims of fraud and misrepresentation.[7] *Cf. Rawls v. Friedman's Inc.*, 2003 WL 21728838, at *3 (S.D.Miss.2003) (no cognizable claim for misrepresentation as plaintiff had no right to reasonably rely on any alleged representation that was flatly contradicted by the terms of the loan documents); *see also McArthur v. Time Ins. Co.*, 889 F.Supp. 938, 942 (S.D.Miss.1995) (stating that "to prevail on her claims of fraud and misrepresentation, plaintiff must prove (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.") (citation omitted).

■ Finally, the court turns to plaintiff's contention that the insurance policy at issue violates the Social Security Act. Plaintiff takes the position that defendant's policy of offsetting disability benefits before such benefits are actually received by the individual violates 42 U.S.C. § 407, which provides,

> The right of any person to any future payment under the subchapter shall not

---

**6.** Defendant also argues that even if Jones did not receive the certificate of coverage, she did receive the brochure, letters from USAble Life sent when she became eligible for disability benefits and the payment option election form, all of which adequately described the features of the policy, including the reduction for estimated social security benefits.

**7.** While not alleged in her complaint, in her response to the motion for summary judgment, Jones claims that defendant wrongfully terminated her benefits in December 2004, after she failed to furnish updated medical information. According to plaintiff, in April 2004, she submitted information regarding her disability, and USAble Life responded, acknowledging receipt and informing her that updated information would be requested again in April 2005. Notwithstanding, defendant apparently requested medical information from plaintiff in September, October, and November 2004, and when plaintiff failed to respond to any request, defendant informed her that her claim had been closed. Defendant submits that this claim is without merit and has directed the court's attention to Phillips' declaration, in which she explains that after plaintiff received the December letter, she submitted the supplemental information requested and claim payments were resumed. In light of this declaration, it does not appear that this allegation, advanced only in plaintiff's response, requires further consideration by the court.

be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

While plaintiff acknowledges that several courts have held that an insurer is entitled to offset benefits for social security benefits actually received, she submits that the Fifth Circuit has not addressed whether or not an insurer may offset for benefits not yet received by an insured, and therefore, the issue is a matter of first impression for the court. Notably, however, plaintiff has failed to direct the court's attention to any cases which would support her position that the Social Security Act prohibits defendant's practice of offsetting for benefits not yet received.

In response, defendant first contends that this is a moot issue, because in August 2005, plaintiff was awarded social security benefits in an amount in excess of its estimation of benefits. Furthermore, USAble Life maintains that at least two courts have recognized that where the policy so provides, an insurer is entitled to an offset for social security benefits the insured was entitled to receive, regardless of whether the benefits were actually received, or even applied for, by the insured. *See Grooman v. Northwestern Mut. Life Ins. Co.,* 200 F.Supp.2d 523, 530 (D.Md. 2002) (holding that insurer was entitled to offset both received and non-received social security disability benefits, based upon the plain language of its policy); *Mays v. Insurance Co. of North America,* 407 Mich. 165, 284 N.W.2d 256, 259 (1979)(enforcing a disability insurance policy which provided that the benefit amount would be reduced to account for the social security benefit payable "regardless of actual re-

ceipt of such benefit due to the Insured's failure to apply therefor").

Having reviewed the parties' respective arguments, the court concludes that plaintiff's reliance on 42 U.S.C. § 407, also known as the Social Security Act's "anti-assignment" provision, is misplaced, because USAble Life, in drafting a policy which reduces the benefits it pays an insured based on an estimate of payable social security benefits, did not impact the amount of social security its insured receives, or is entitled to receive, from the federal government. In the court's opinion, such an offset provision, whether applied prospectively or retroactively, does not violate the anti-assignment provision. *See Lamb v. Connecticut Gen. Life Ins. Co.,* 643 F.2d 108, 111 (3rd Cir.1981)(stating, "Federal law, however, currently does not prohibit unfrozen offsets against Social Security benefits that do not impact the level of funds the insured receives from the federal government."); *Fahringer v. Paul Revere Ins. Co.,* 317 F.Supp.2d 504, 522 (D.N.J.2003) (finding an insurer was permitted to offset the benefits paid to the insured against the social security benefits she received, but it is not permitted to have a security interest or lien on the insured's future social security benefits).

Based on the foregoing, defendant's motion for summary judgment is granted.[8]

---

**8.** Defendant's counter-claim against plaintiff is the only claim remaining in this action.