RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0225P (6th Cir.)
File Name: 00a0225p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARILYN ANDERSON,
     *Plaintiff-Appellant,*

     *v.*

PROCTER & GAMBLE
COMPANY; THE PROCTER &
GAMBLE DISABILITY BENEFIT
PLAN,
     *Defendants-Appellees.*

No. 99-5800

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 98-01131—James D. Todd, District Judge.

Submitted: April 25, 2000

Decided and Filed: July 12, 2000

Before: RYAN and BOGGS, Circuit Judges; and
DUGGAN, District Judge.[*]

---

[*]The Honorable Patrick J. Duggan, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

_____

**COUNSEL**

**ON BRIEF:** Justin S. Gilbert, THE GILBERT FIRM, Jackson, Tennessee, for Appellant.    Janis W. Kesser, BAKER, DONELSON, BEARMAN & CALDWELL, Memphis, Tennessee, for Appellees.

_____

**OPINION**

_____

BOGGS, Circuit Judge.  This is an ERISA case in which the Appellant, Marilyn Anderson, a beneficiary of the Appellee's Disability Benefit Plan, seeks to recover for the cost of legal assistance during her administrative appeal to the Plan Trustees.  For the reasons set forth below, we affirm the district court's order denying Anderson's request for fees.

**I**

Procter & Gamble (P&G) hired Anderson on November 28, 1988, when she was twenty years old.  In 1992, Anderson experienced numbness on the left side of her body, lost coordination of her left leg, and lost the ability to distinguish temperatures. Shortly after experiencing these symptoms, she learned that she was suffering from a demyelinating illness. Despite her symptoms, Anderson continued to work for P&G until 1995, occupying various positions in California, Ohio, and, finally, Jackson, Tennessee.  By May 1995, however, Anderson's symptoms had become much more severe.  She suffered from fatigue, vomited frequently, and her right foot began to drag when she walked.  Dr. James Spruill, a neurologist in Jackson, performed various diagnostic tests and discovered that Anderson was suffering from multiple sclerosis.  After informing Anderson of her condition, Dr. Spruill wrote a letter to P&G dated July 13, 1995, in which he explained the extent of Anderson's illness and recommended

administrative phase of a benefits proceeding, we AFFIRM
the district court's order granting summary judgment for
P&G.

ways in which the company could accommodate her
disability. Following her diagnosis, Anderson saw another
neurologist, Dr. Charles Cape, who recommended that she
cease work and go on disability leave for at least three
months.

The Procter & Gamble Disability Benefit Plan (the Plan)
defines "Total Disability" as:

> A mental or physical condition resulting from an illness
> or injury which is generally considered totally disabling
> by the medical profession. Usually, total disability
> involves a condition of such severity as to require care in
> a hospital or restriction to the immediate confines of the
> home.

The Plan defines "Partial Disability" as:

> A mental or physical condition resulting from an illness
> or injury because of which the Participant cannot perform
> regular duties but can perform other useful duties. Thus,
> a condition of Partial Disability does not necessarily
> prevent the Participant from performing useful tasks,
> utilizing public or private transportation, or taking part in
> social or business activities outside the home.

From May 1995 through early November 1996, Anderson
received Total Disability benefits from P&G for the periods
during which her illness caused her to be absent from work.
P&G's Disability Summary Plan Description (SPD) provides
that "Total Disability" benefits are payable for 52 weeks for
any one period of disability.[1] To qualify for such benefits, a

---

[1] If an employee remains totally disabled for more than 52 weeks, the
employee may apply for benefits under P&G's "Long-Term Disability
Allowance Policy." Under this Plan, enrollment is "automatic" and "no
action . . . is required to be eligible." However, the claimant must
continue to provide monthly statements from a qualified physician
certifying the claimant's disability.

claimant must visit a doctor and complete a disability application. If the disability lasts for more than thirty days, the claimant is required periodically to submit updated doctor's certificates to the plan's disability reviewing board. From May 1995 through November 13, 1996, Anderson provided P&G with the requisite certifications for the periods during which she was absent from work.

Although Dr. Cape informed the Plan that Anderson should continue to receive total disability benefits, the Local Disability Reviewing Board rejected her claim but did not notify her of its decision in writing and did not adequately inform her of the process required to challenge its oral denial of her request for benefits. After receiving notice of the Board's decision, Anderson retained an attorney, Justin S. Gilbert, to assist her in challenging the Board's denial of her claim. Gilbert obtained a written statement of the Plan's denial of Anderson's request for benefits and, on January 15, 1997, appealed the decision by sending the Trustees a nine-page letter with exhibits documenting the nature and extent of her disability. Although the Plan rejected Anderson's claim for benefits in her initial appeal, the Trustees later revised their decision and held that Anderson was entitled to receive total disability benefits and continuing health care coverage. Satisfied with the Board's ruling, Anderson did not appeal the Plan's decision on the merits. She did, however, file this action in the district court to recover attorneys' fees from P&G for the expenses she incurred in pursuing her claim for benefits in administrative hearings before the Trustees.

The parties do not dispute the reasonableness of Anderson's fee request, which the parties stipulate is for $5,250. The parties do, however, disagree on whether ERISA authorizes Anderson to recover attorneys' fees because her claims were resolved in administrative proceedings and never resulted in litigation. Specifically, P&G argues that Anderson did not require the services of an attorney to pursue her rights under the Plan, despite Anderson's contention that she was forced to hire counsel because P&G failed adequately to inform her

Plan "reversed its decision [before the parties filed suit], . . . the Plaintiff [would] not [be] entitled to attorneys' fees"); *see also Hedley-Whyte v. Unum Life Ins. Co. of America*, 1996 WL 208492 (D. Mass. 1996) (allowing a plaintiff whose case had proceeded to litigation to recover attorneys' fees for work done both in the administrative and litigation phases of the proceeding, but noting that, if the case had concluded before suit were filed, the plaintiff would not have been able to recover attorneys' fees under § 1132(g)). Indeed, no court has ever held that a plaintiff who settles all of her ERISA claims at the administrative stage and files suit only to recover costs is permitted to recover attorneys' fees under § 1132(g). *See, e.g.*, *Aminoff v. Ally & Gargano, Inc.*, 1996 WL 675789 (S.D.N.Y. 1996) (rejecting the plaintiffs' claim for attorneys' fees because, "[u]nder the plain language of the statute, plaintiffs cannot recover fees incurred in settling the dispute because no litigation was ever instituted"); *Schneider v. Wisconsin UFCW Unions and Employer's Healthplan*, 13 F. Supp. 2d 837 (E.D. Wis. 1998) (similar); *Swaback v. American Information Technology Corp.*, 1998 WL 25759 (N.D. Ill. 1998) (same).

In short, although Anderson's benefit claims were meritorious and the fee award she requests is reasonable, the district court did not err in granting summary judgment for Procter & Gamble because ERISA does not authorize recovery of attorneys' fees for work performed during the administrative exhaustion phase of a benefits proceeding. *See Armistead*, 944 F.2d at 1303 (emphasizing that the "American rule" precluding fee-shifting "forms the legal background against which § 1132(g)(1) was enacted"); *Cann*, 989 F.2d at 316 (noting that a district court does not abuse its discretion in denying a plaintiff's request for fees if the court lacks statutory authority to award the fees requested).

### III

Because Section 502 of ERISA does not permit parties to recover attorneys' fees for legal work performed during the

U.S.C. § 1001(a). This purpose might be undermined by awards which, by encouraging plans to pay questionable claims in order to avoid liability for attorneys' fees, could reduce their "soundness and stability." Since the validity of a particular claim is not always immediately obvious, plans may need to challenge those which the trustee in good faith believes are invalid without expanding its risk by a double or nothing bet on attorneys' fees. Also, some claimants and some plans may use informal internal review procedures, accomplished by nonlawyers, perhaps union or other employee representatives and plan representatives; a nonliteral reading of the statute [that] exposed the loser to the prevailing party's attorneys' fees might undermine such a process.

*Cann*, 989 F.2d at 317 (distinguishing the Supreme Court's decisions in *Sullivan* and *Delaware Valley*).

The Ninth Circuit has reaffirmed the reasoning in *Cann* in several recent decisions, notably *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1172 n.8 (9th Cir. 1999), in which the court cited *Cann* for the proposition that "[f]ees are not available for the administrative portion of an ERISA appeal." *See also French v. Canada Life Assurance Co.*, 1997 WL 312250 (9th Cir. 1997), at *3 (affirming the district court's decision to deduct from the plaintiff's fee award costs incurred by the plaintiff's attorneys *before* the complaint was filed); *Thomke v. Connecticut General Life Ins. Co.*, 1994 WL 38597 (9th Cir. 1994) (affirming the district court's decision to dismiss a request for attorneys' fees filed by a plaintiff who settled his ERISA claims at the administrative stage and filed suit only to recover his costs).

Although some courts have criticized the *Cann* decision as "too restrictive and narrow," *Hamilton v. Bank of New York*, 1995 WL 447659 (D. Del. 1995), even the *Hamilton* court (1) found *Cann*'s "reasoning and analysis to be persuasive," and (2) agreed with the Ninth's Circuit's later decision in *Thomke*. *See Hamilton*, 1995 WL 447659, at *6 (stating that, had the

of her administrative rights following the Plan's initial (oral) denial of Total Disability benefits. P&G further emphasizes that Anderson did not prevail on her claim that she was totally disabled as of November 17, 1996, and that she failed to appeal the Plan's determination that she was eligible for Total Disability benefits only as of August 1997.

Although this circuit has never ruled on the question whether ERISA permits an award of attorneys' fees for legal services performed during the administrative stage of a benefits proceeding, the district court concluded, based on case law from other circuits, that the statute does not permit Anderson to recover fees. The district court thus granted P&G's motion for summary judgment, citing 29 U.S.C. § 1132(g)(1), the ERISA provision governing fee awards. The sole issue on appeal is whether the district court has discretion under ERISA to award attorneys' fees for legal services rendered during administrative proceedings for disability benefits.

## II

This court reviews *de novo* the district court's grant of summary judgment for Procter and Gamble. *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997); *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996), *cert. denied*, 117 S. Ct. 683 (1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

This court reviews for abuse of discretion the district court's denial of the plaintiff's request for attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). *See, e.g., Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1305 (6th Cir. 1991).

### *Recovery of Attorneys' Fees Pursuant to 29 U.S.C. § 1132(g)(1)*

Section 502 of the Employee Retirement Income Security Act (ERISA), codified at 29 U.S.C. § 1132(g), provides, in pertinent part, that:

> (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1) (1996). Section 1132(a) defines the circumstances under which a party may file an action subject to § 1132(g)'s provisions on attorneys' fees as follows:

> A civil action may be brought –
>
> (1) by a participant or beneficiary –
>
> (A) for the relief provided for in subsection (c) of this section, or
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
>
> . . . .
>
> (3) by a participant, beneficiary, or fiduciary,
>
> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>
> (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

the Court explained, "enforcement of the [consent] decree, whether in the courtroom before a judge, or in front of a regulatory agency with power to modify the substance of the program ordered by the court, involve[s] the type of work which is properly compensable as a cost of *litigation* under § 304 [of the Clean Air Act]." *Id.* at 558 (emphasis added). Because Anderson is requesting attorneys' fees only for exhaustion of administrative remedies, and because she prevailed on her claims at the administrative stage and thus did not seek review in the courts, it is clear that neither *Sullivan* nor *Delaware Valley* supports her claim that she is entitled to prevail on her request for fees.

Although exhaustion of administrative remedies is a prerequisite to seeking judicial review of ERISA claims, *see, e.g.*, *Baxter v. C.A. Muer Corp.*, 941 F.2d 451 (6th Cir. 1991), exhaustion proceedings are not "intimately connected" with judicial proceedings in the manner described by the Supreme Court in its decisions awarding costs to parties who prevailed in litigation related to the administrative proceedings for which they were awarded fees. Despite this, Anderson argues that awarding fees in this case would advance the policies underlying § 1132(g)(1). Although the Supreme Court has often looked to the legislative history of various fee-shifting provisions in determining whether Congress intended to permit fee awards for costs incurred during administrative proceedings, with respect to this specific provision, "no legislative history exists to provide guidance to the courts." *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1303 (6th Cir. 1991) (discussing the lack of legislative history concerning § 1132(g)(1)). The discussion in *Cann* concerning the legislative history of ERISA generally is, however, persuasive as to why § 1132(g)(1) should not be interpreted to permit fee awards for legal expenses incurred in the course of exhausting administrative remedies. As the Ninth Circuit explained:

> [T]he congressional purpose [of ERISA] emphasized promotion of "the soundness and stability of plans with respect to adequate funds to pay promised benefits." 29

Court's policy rationale for allowing the prevailing party in *Sullivan* to recover attorneys' fees for administrative proceedings does not apply here. In *Sullivan*, the Court found that, in light of the "mandatory nature of the administrative proceedings" and their "close relation in law and fact to the issues before the District Court on judicial review," denying fees for administrative proceedings subsequent to litigation would create an incentive for "attorneys to abandon claimants after judicial remand," a result that "runs directly counter to long established ethical canons of the legal profession." *Id.* at 890. Denying fees for pre-litigation exhaustion of administrative remedies would not present any such difficulty. In this case, unlike in *Sullivan*, the administrative proceedings were not conducted pursuant to a court order and the plaintiff did not even seek judicial review of her benefits claim because she prevailed at the administrative stage. *See id.* at 889 (upholding the plaintiff's fee award for administrative expenses because, "[a]s in *Delaware Valley*, the administrative proceedings on remand . . . were crucial to the vindication of [the plaintiff's] rights"). *Sullivan* therefore does not provide a basis for ruling that the district court abused its discretion in denying Anderson's request for fees.

Anderson's reliance on the Supreme Court's decision in *Delaware Valley* is similarly unavailing. It is true that, in *Delaware Valley*, the Supreme Court held that reference in a fee-shifting provision to recovery for expenses incurred in any "action" (as opposed to any "action or proceeding") did not automatically preclude fee awards for work done in administrative proceedings. *See Delaware Valley*, 478 U.S. at 558-59. However, unlike Anderson (but like the claimant in *Sullivan*), the plaintiffs in *Delaware Valley* challenged the merits of the administrative proceeding in court, and only recovered fees incurred during administrative appeals that took place *after* they filed suit to enforce a court-approved consent decree. *See id.* at 561 (stating that legal fees incurred during administrative proceedings may be recoverable if the work is "useful and of a type ordinarily necessary to secure the result *obtained from the litigation*" (emphasis added)). As

29 U.S.C. § 1132(a) (1996).

Because Anderson did not file a civil action for any of the reasons set forth in § 1132(a), but filed suit only to recover attorneys' fees for legal work performed during her administrative claims proceeding, we find that § 1132(g) does not permit her to recover her costs.

Although neither this court nor the United States Supreme Court has ruled on whether § 1132(g) permits a party to recover attorneys' fees for legal services rendered during an administrative claims proceeding, the district court concluded, based on decisions from the Ninth Circuit and from other federal district courts, that ERISA did not permit Anderson to recover attorneys' fees for work performed during the administrative appeals process. In *Cann v. Carpenter's Pension Trust Fund for Northern California*, 989 F.2d 313 (9th Cir. 1993), the Ninth Circuit held that § 1132(g) does not permit parties to recover attorneys' fees for the administrative phase of an ERISA proceeding, but limits awards to expenses incurred *after* one of the parties has filed a complaint in court. *See id.* at 315 (holding that the opening phrase of § 1132(g), "[i]n any action," limits recovery to fees incurred during "litigation in court"); *see also Mintkenbaugh v. Central States Southeast and Southwest Areas Health and Welfare Fund*, 1996 WL 931993 (W.D. Ky. 1996) (adopting the reasoning in *Cann* and dismissing the plaintiff's claim for attorneys' fees); *LaSelle v. Public Serv. Co. of Colorado*, 988 F. Supp. 1348, 1352 (D. Colo. 1997) (similar).

In *Cann*, the Ninth Circuit reasoned that § 1132(g)(1) restricts recovery of attorneys' fees to ERISA cases *litigated in court* because, if Congress had intended to provide for the recovery of attorneys' fees in administrative proceedings, it would have indicated as much by allowing for the recovery of fees in any "action *or proceeding*." *Cann*, 989 F.2d at 316 (emphasizing that the word "action" generally refers only to "proceedings in court, not administrative proceedings even though necessary and valuable") (emphasis added) (citing

*New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61 (1980)).

Anderson is correct that the Supreme Court in *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546 (1986) held that, in interpreting a statutory provision authorizing attorneys' fees, reference to an "action," rather than an "action or proceeding," is "not a sufficient indication that Congress intended [the fee-shifting provision] to apply only to judicial, and not administrative, proceedings." *Id.* at 559 (discussing the fee-shifting provision in Section 304(d) of the Clear Air Act, codified at 42 U.S.C. § 7604(d)). Anderson is also correct that, in *Sullivan v. Hudson*, 490 U.S. 877 (1989), the Court held that "administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of [a] civil action for purposes of a fee award." *Id.* at 892 (discussing the scope of the fee-shifting provisions in the Equal Access to Justice Act, codified as amended at 28 U.S.C. 2412(d)). However, neither *Sullivan* nor *Delaware Valley* supports an award of attorneys' fees in this case.

In *Sullivan*, the Supreme Court allowed the prevailing party to recover attorneys' fees for legal work done in an administrative proceeding held pursuant to a district court order remanding the plaintiff's social security claims to the Secretary of Health and Human Services. *See Sullivan*, 490 U.S. at 892. Unlike Anderson, the plaintiff in *Sullivan* had already filed suit against the Secretary, after his claim for social security benefits had been denied. *See id.* at 881-82. Although the district court affirmed the Secretary's decision, the Eleventh Circuit reversed and directed the district court to remand the case to the Secretary for reconsideration. *See ibid.* The fee award approved by the Supreme Court included only expenses incurred during the administrative proceedings *following* (not, as here, preceding) the merits litigation in the district court, and the district court retained jurisdiction over the action on remand for the purpose of considering a petition for attorneys' fees. *See id.* at 890.

In holding that the plaintiff could recover fees for costs incurred during the administrative remand, the Supreme Court emphasized the "somewhat unusual" provision for judicial review of agency action in § 205(g) of the Social Security Act:[2]

> The detailed provisions for the transfer of proceedings from the courts to the Secretary and for the filing of the Secretary's subsequent findings with the court suggest a degree of direct interaction between a federal court and an administrative agency *alien to traditional review of agency action* . . . .

*Id.* at 885 (emphasis added). Thus, although the *Sullivan* Court held that "administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of [a] civil action for purposes of a fee award," it is clear from the Court's reasoning that fees for administrative proceedings under 29 U.S.C. § 1132(g) should be recoverable only when the final judgment (or enforcement thereof) in the prevailing party's *suit* depends on the administrative proceedings for which fees are being claimed. *See id.* at 887 (emphasizing that there would be "no final judgment in the claimant's civil action for judicial review until the administrative proceedings on remand [were] complete"). As the Court explained, "the Social Security claimant's status as a prevailing party and the final judgment in her civil action . . . are often completely dependent on the successful completion of remand proceedings before the Secretary." *Ibid.*; *see also id.* at 890 (noting that the "provisions of the Social Security Act contemplate an ongoing civil action of which the [administrative] remand proceedings are but a part").

*Sullivan* is distinguishable from the present case not only because of differences in the governing statutes; the Supreme

---

[2]Codified at 42 U.S.C. § 405(g).