NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0203n.06

**FILED**
Mar 17, 2014
DEBORAH S. HUNT, Clerk

No. 12-2059

# UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WILLARD BENDER; DON LAMPE; CAROLYN CONNER; JAMES TAYLOR; ROGER SMOKER; ROSE ANN ROHR, individually and on behalf of themselves and all persons similarly situated, | ) ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) | |
| and | ) ) | |
| INTERNATIONAL UNION UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| NEWELL WINDOW FURNISHINGS, INC., KIRSCH DIVISION; NEWELL OPERATING COMPANY, INC.; NEWELL RUBBERMAID HEALTH AND WELFARE PROGRAM 560, | ) ) ) ) ) | |
| Defendants-Appellants. | ) ) ) | |

BEFORE: ROGERS, McKEAGUE, and WHITE, Circuit Judges.

ROGERS, Circuit Judge. Newell Window Furnishings, an employer that lost a court case in the Western District of Michigan involving retirement benefits, appeals an order of the district court awarding attorney's fees and costs to the plaintiff-retirees under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). The district court awarded

fees, including fees incurred by the plaintiff-retirees in defending a closely related suit in the Northern District of Illinois that was dismissed in their favor on forum shopping grounds. The plaintiffs' union was a party to the Illinois case, but was dismissed from the case below. The district court did not abuse its discretion in awarding fees to plaintiffs for costs incurred in both the Illinois and Michigan actions, and properly denied Newell's subpoena *duces tecum* for information that the court concluded was not relevant to the instant litigation.

In 2005, Newell notified its retired hourly union members, including plaintiff Willard Bender, "that it was reducing their health benefits by changing the premiums and co-pays provided in the Plan." Newell then filed suit in the Northern District of Illinois against all potentially affected Plan participants and their union, the International Union, United Automobile, Aerospace and Agricultural Workers of America (UAW). Newell sought a declaratory judgment to the effect that Newell had not breached its collective bargaining agreements under the Labor-Management Relations Act (LMRA), or ERISA. Bender (and a class of retirees), along with the UAW, filed a class action suit in the Western District of Michigan, alleging that Newell's reduction of the Plan violated the LMRA and ERISA. The Illinois district court subsequently dismissed Newell's case without reaching the merits, finding that Newell's action was an example of improper forum shopping, and the Seventh Circuit affirmed. *Newell Operating Co., Inc. v. U.A.W.*, No. 06-cv-50010 (N.D. Ill. Mar. 27, 2007), *aff'd*, 532 F.3d 583 (7th Cir. 2008), *overruled, New Page Wis. Sys. v. United Steel, Paper, & Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union*, 651 F.3d 775 (7th Cir. 2011).[1]

---

[1]In overruling *Newell*, the Seventh Circuit held: "*Newell's* incomplete analysis was a consequence of a deficient presentation by the litigants. The briefs in *Newell* focused on whether the fiduciary's complaint asked for

In the Western District of Michigan, the district court dismissed the UAW's claims, finding that they directly violated a 2000 Shutdown Agreement between the UAW and Newell, in which the UAW agreed not to "initiate, solicit, encourage, or finance civil actions or litigations of any type against Newell other than for the enforcement of the Shutdown Agreement's terms." However, the court granted summary judgment to Bender and the remaining plaintiffs, who are not parties to the Shutdown Agreement, finding that plaintiffs were entitled to vested lifetime healthcare benefits under the Plan. The Sixth Circuit affirmed the decision. Plaintiffs (referred to here collectively as "Bender") then brought this action to recover attorney's fees under ERISA, seeking reimbursement for the work done in both the Michigan and the Illinois litigation.

In response to Bender's application for attorney's fees, the magistrate judge concluded that Bender was entitled to attorney's fees, and that the amount of time Bender's counsel claimed was reasonable. As part of his assessment, the magistrate judge examined the five "*King* factors," which are no longer mandatory, but which may guide a court in deciding whether to award fees.[2] However, the magistrate judge reduced the hourly rate requested by Bender's two attorneys to a blended rate based on the prevailing market rate in effect over the five-plus years of litigation. In addition, the magistrate judge concluded that Bender's counsel was entitled to attorney's fees for work done in the Illinois litigation because "both cases, the Illinois litigation and the present Michigan litigation, were so intertwined that plaintiffs' counsel in the present

---

'appropriate equitable relief'; the parties assumed that a negative answer would imply the absence of jurisdiction…. [W]e conclude that *Newell*—which no other circuit has followed—cannot be treated as authoritative on the question of subject-matter jurisdiction in declaratory-judgment actions about plans covered by ERISA." *NewPage Wis. Sys.*, 651 F.3d at 779.

[2] The *King* factors are (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Wells v. United States Steel*, 76 F.3d 731, 736 (6th Cir. 1996).

case had no choice but to travel to the Northern District of Illinois and resist the forum-shopped

lawsuit defendants filed there, if plaintiffs were going to prevail here." The magistrate judge

opined:

> One is left to speculate as to why defendants elected to initiate this litigation since their opposition was so clearly without merit…. Newell filed a preemptive law suit in Illinois in anticipation of the Michigan action, which was dismissed due to forum shopping and took a position in the Michigan litigation contrary to its own lawyer's due diligence findings. Newell maintained this position notwithstanding that it was unsupported by the language of the collective bargaining contract or the uncontradicted testimony of those at the bargaining table, even those who had negotiated on behalf of the management. The mass of evidence presented to the court was consistent with plaintiffs' position. While Newell was free to engage in this course of action, it must bear the consequences of doing so.

However, "to reflect the time apportioned to the Union's claims," the magistrate judge reduced

the attorney's fee award by 50% in both the Illinois litigation and the early stages of the

Michigan lawsuit, when the UAW was still a party to the action.

Prior to the hearing on attorney's fees, "[b]oth parties also subpoenaed opposing counsel

to produce testimony and records at the hearing on plaintiffs' application for attorneys' fees."

The subpoena served on Bender's attorney "was intended to establish the relationship he and his

law firm had with the Union, their fee-reimbursement arrangement, and whether the relationship

violated the Shutdown Agreement." Because the subpoenas required counsel "to appear and

testify at an improper time and place, i.e., during a non-evidentiary motion hearing scheduled in

the federal court," the magistrate judge quashed both subpoenas for noncompliance with Fed. R.

Civ. P. 45(a)(1)(A)(iii). During the hearing on the fee application, counsel for Bender and

counsel for the UAW conceded that the UAW was paying counsel for Bender a reduced rate to

help fund the litigation, and Bender and the UAW's counsel had an agreement to repay the UAW

for its reduced rate if granted a fee award. ("Our arrangement has always been that we repay them so they have neither a gain nor a loss."). If awarded more than the reduced rate provided by the UAW, counsel for Bender would retain the remainder. Newell appealed the magistrate judge's order to the district court, contesting the order quashing the subpoena of Bender's attorney. Both Newell and Bender appealed different aspects of the magistrate judge's fee award.

The district court affirmed the magistrate judge's order quashing the subpoena, and affirmed in part and modified in part the magistrate judge's fee award.[3] Newell argued that the magistrate judge erred in awarding Bender attorney's fees because 1) the UAW would "benefit from any fee award based on the UAW's financing of this action or any other action in violation of a Shutdown Agreement"; 2) "to the extent that fees and expenses have been paid by the UAW, they are not subject to reimbursement and may not be awarded"; 3) any fees incurred in the Illinois suit (at both the district court and appellate levels) may not be awarded under ERISA § 502(g); and 4) the UAW is not entitled to a fee award under ERISA § 502(g). The district court accurately characterized Newell's objections as "primarily based on the relationship between the Union and Plaintiffs, which Newell alleges is in direct violation of the Shutdown Agreement the parties executed when the Sturgis facility was closed back in 2000." As the court noted, this challenge overlaps with another independent lawsuit currently pending before the district court, which alleges that the UAW breached the Shutdown Agreement by funding Bender's counsel in the litigation now before this court. *Newell Window Furnishings, Inc. v. UAW*, No. 1:11-cv-1080 ("*Newell II*"). As to the fee award, the district court agreed with the

---

[3] Newell filed a motion to strike three of Bender's objections as untimely under Fed. R. Civ. P. 72(b)(2). The district court found Newell's argument unpersuasive, and denied the motion. Newell does not challenge these determinations on appeal.

magistrate judge that Bender was entitled to attorney's fees for both the Michigan and the Illinois

suits, because

> [t]he fact that the Illinois case was dismissed in favor of the Michigan case, rather
> than transferred to this Court, does not preclude the Court from awarding
> attorney's fees arising out of the Illinois action, particularly in the ERISA context,
> where success 'on the merits'—not on procedural rules—is required to trigger the
> attorney fee-shifting provision of the statute.

The district court also affirmed the magistrate judge's use of a blended hourly rate to calculate

Bender's attorney's fees because "[t]he blended rates are towards the top of the market average

for all years relevant in this litigation, whereas Plaintiff's proposed rate methodology would

award Plaintiffs fees near the 100th percentiles for all five years of litigation."

However, the district court disagreed with the magistrate judge's conclusion that the fee

award should be reduced by 50% for work done on behalf of UAW, reasoning that the UAW was

not made a party to the Illinois action by choice, and in any event, the UAW retained separate

counsel, which represented the UAW's interests throughout the Illinois proceedings. The district

court therefore declined to adopt the $66,989.63 reduction in attorney's fees.

Finally, the district court affirmed the magistrate judge's grant of Bender's motion to

quash the subpoena *duces tecum* that Newell served on Bender's attorney, because the reason for

the subpoena (to establish the relationship between Bender's attorney and the UAW, their fee-

reimbursement arrangement, and whether the relationship violated the Shutdown Agreement)

"may be germane to the issues presented in *Newell II*, [but] they are not required to address the

attorney fee application in this case."

The district court did not abuse its discretion in awarding fees to Bender that will

ultimately go to the UAW, in awarding fees for the related litigation in a different federal court,

or in denying the subpoena *duces tecum*. *See First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (review of attorney's fees awarded pursuant to 29 U.S.C. § 1132(g) is for abuse of discretion); *U.S. v. 691.81 Acres of Land*, 443 F.2d 461, 463 (6th Cir. 1971) (*per curiam*) (applying abuse of discretion standard to grant of a motion to quash).

Newell argues primarily that the district court should not have awarded fees that will ultimately go to the UAW, arguing that the UAW was precluded from bringing this suit under the Shutdown Agreement. First, none of the fees were awarded by the district court to the UAW, so that Newell technically has no basis for challenging, as it does, an award of "attorney's fees and expenses to the UAW." Second, we know of no independent principle that prohibits a court from awarding fees that are otherwise proper because the fees may be used to reimburse a third party who has fronted the services or fees.

ERISA's attorney fee provision, 29 U.S.C. § 1132(g)(1),[4] provides, "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Such an award is proper so long as the party to whom the fees are awarded "had some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010). The party awarded fees, Bender, indisputably qualifies as "a participant, beneficiary, or fiduciary" under the plan, and Bender won the underlying lawsuit against Newell on the merits.

Newell alleges that the relationship between Bender and the UAW, under which some of the fee award may be reimbursed to the UAW, is a direct violation of the Shutdown Agreement.

---

[4] In its opinion, the district court quotes this provision as 29 U.S.C. § 1132(a)(1)(B). However, it appears as 29 U.S.C. § 1132(g)(1) in the current version of the statute.

However, the nature and propriety of the fee arrangement between Bender and the UAW is the subject of a separate litigation, *Newell II*. More to the point, we have explicitly rejected the argument that remitting advanced attorney's fees to a union constitutes a prohibited transfer of funds under ERISA where no provision of ERISA prohibits such a transaction. *See Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 860 (6th Cir. 2000).

Newell argues that it is impermissible to award Bender attorney's fees for work done in the Illinois action that, in Newell's words, "furthered the interests of the UAW," but this is not reason enough to deny the fee award. The question of whether work done "furthered the interests" of a third party is irrelevant. The crux of Newell's claim is that Bender's attorney was working on behalf of the UAW in the Illinois action and part of the Michigan action before the UAW was dismissed, and that the magistrate judge's original reduction of fees should be reinstated to reflect this reality. The district court reviewed the record and found that the UAW retained separate counsel, who represented the UAW's interests throughout the Illinois proceedings, and that any pleadings filed on behalf of the UAW were completed by counsel other than Bender's attorney or his law firm. The court noted, "Certainly the billing records indicate collaboration and coordinated strategy between the retiree-plaintiffs and the Union, but this is to be expected in a multi-defendant case, particularly this one, where Defendants decided to sue both the individual Plaintiffs and the Union that represented them at the time." This conclusion is supported by *Welton v. Osborn*, 124 F. Supp. 2d 1114, 1120-21 (S.D. Ohio 2000), in which the district court awarded full attorney's fees for work that jointly benefited another plaintiff where several of the issues in the two cases were inextricably linked. Similarly, the Third Circuit in *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3d Cir. 1993), reasoned that "if the plaintiff can prove that the fees and expenses incurred in the

other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on the other litigation was inextricably linked to the issues raised in the present litigation, and the plaintiff had not previously been compensated for those fees and expenses, then the district court may include those fees and expenses in its fee award."

In addition, the district court reasonably determined that Bender should be fully compensated for work done on the Michigan case while the UAW was still a party: "The Union had little practical choice but to join the Michigan case as long as the forum fight remained unresolved," since "[s]taying out of the fray in Michigan would potentially impact the forum analysis in a way that favored Illinois as having all arguably necessary parties in the case." Finally, the court concluded that even though Bender's attorney also represented the UAW in the early stages of the Michigan suit, "all work counsel undertook directly benefitted Plaintiffs and was necessary to pursue Plaintiffs' claims, particularly given Defendants' repeated attempts to get the entire case dismissed based on the Union's involvement and alleged breach of the Shutdown Agreement." These determinations do not constitute an abuse of discretion.

The district court also did not abuse its discretion, or act beyond the law, in compensating Bender for the hours counsel spent defending Bender against the initial suit brought by Newell in the Northern District of Illinois. The district court agreed with the magistrate judge that "[t]he fees incurred in [the Illinois litigation] were directly related to the Michigan case. To come to a contrary conclusion would ignore the reality of the situation. Defendants chose to commence the Illinois action by serving the retirees of a Michigan plan (plaintiffs here) individually and requiring them and their attorneys to defend in Illinois."

This court's decision in *Anderson v. Procter & Gamble Co.*, 220 F.3d 449 (6th Cir. 2000), is not to the contrary. In that case, we decided "the sole issue . . . of whether the district court has discretion under ERISA to award attorney's fees for legal services rendered during administrative proceedings for disability benefits." *Id.* at 451. We gave a negative answer to this question because no civil action was filed except for the fees sought for the administrative claims proceeding. We recognized that in interpreting a statutory provision authorizing attorney's fees, the Supreme Court has held that "reference to an 'action,' rather than an 'action or proceeding' is 'not a sufficient indication that Congress intended [the fee-shifting provision] to apply only to judicial, and not administrative, proceedings." *Id.* at 453 (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 559 (1986)). Indeed, "administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of [a] civil action for purposes of a fee award." *Id.* at 453 (quoting *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989)). Nevertheless, we denied Anderson's claim for attorney's fees, concluding that "it is clear from the [Supreme] Court's reasoning that fees for administrative proceedings under 29 U.S.C. § 1132(g) should be recoverable only when the final judgment (or enforcement thereof) in the prevailing party's *suit* depends on the administrative proceedings for which fees are being claimed." *Anderson*, 220 F.3d at 453. In ruling against Anderson, we focused on the fact that "the Supreme Court's policy rationale for allowing the prevailing party in *Sullivan* to recover attorneys' fees for administrative proceedings does not apply here," because the Court's decision in *Sullivan* was based on the "'mandatory nature of the administrative proceedings' and their 'close relation in law and fact to the issues before the District Court on judicial review.'" *Id.* at 454 (quoting *Sullivan*, 490 U.S. at 890). The Court in *Sullivan* was concerned that "denying fees for administrative proceedings subsequent to litigation would create an incentive for

'attorneys to abandon claimants after judicial remand,' a result that 'runs directly counter to long established ethical canons of the legal profession.'" *Id.* Therefore, "it is within the court's discretion to conclude that representation on remand was necessary to the effectuation of [the Equal Access to Justice Act's] mandate and to the ultimate vindication of the claimant's rights, and that an award of fees for work performed in the administrative proceedings is therefore proper." *Sullivan*, 490 U.S. at 890. The *Anderson* court found that "[d]enying fees for pre-litigation exhaustion of administrative remedies would not present any such difficulty." *Anderson*, 220 F.3d at 454.

This precedent is not directly on point because the initial litigation in Illinois was a judicial proceeding, and not an administrative action. However, the principles underlying the decision are instructive. Unlike the plaintiff in *Anderson*, who sought attorney's fees for an administrative proceeding she brought against her employer, here Bender was forced to defend itself in an Illinois court from Newell's preemptive suit (the merits of which were ultimately resolved Bender's favor in a Michigan court), which was dismissed, then affirmed, as pure forum shopping. The issues in the Illinois litigation were not just "related" to the Michigan case, they were identical. The retirees had to resolve the Illinois action in order to proceed with their Michigan action. As the district court noted,

> The fact that the Illinois case was dismissed in favor of the Michigan case, rather than transferred to this Court, does not preclude the Court from awarding attorney's fees arising out of the Illinois action, particularly in the ERISA context, where success 'on the merits'—not on procedural rules—is required to trigger the attorney fee-shifting provisions of the statute.

The Court in *Sullivan* was concerned that denying a party attorney's fees in some situations could create perverse incentives for litigants and their attorneys. There, the concern was

attorneys abandoning their clients; here, the concern is forum shopping. Requiring Bender and the retirees to bear the costs of defending themselves against a company that brought suit preemptively in an improper forum to gain an advantage would sanction forum shopping and run counter to the interests of justice. It is clear that the district court did not abuse its discretion in concluding that representation in the Illinois suit was, like the administrative proceeding in *Sullivan*, necessary to the ultimate vindication of the claimant's rights.

Finally, the district court did not abuse its discretion in affirming the magistrate judge's order quashing Newell's subpoena *duces tecum* of Bender's attorney. The subpoena request was intended to establish the relationship between Bender's attorney and the UAW, their fee-reimbursement arrangement, and whether the relationship violated the Shutdown Agreement. The district court reasoned,

> While all of these areas of inquest may be germane to the issues presented in *Newell II*, they are not required to address the attorney fee application in this case, and the Court sees no need to reverse the Magistrate Judge and grant the subpoena request, even if the request had conformed with Fed. R. Civ. P. 45(a)(1)(A)(iii), which it did not.

Newell's argument that the district court's decision "resulted in material, prejudicial, and grievous harm to Appellants" because it "effectively denied Appellants the opportunity to discovery that would have provided the District Court with a developed record on which it could issue an informed decision regarding Appellees' Fee Application" is unpersuasive. Newell will have the opportunity to complete that discovery in *Newell II*, which addresses the relationship between Bender's attorney and the UAW. As we explained in *Surles ex rel Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007), "the Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense … outweighs its likely

benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" At the time the magistrate judge ruled on the motion to quash, *Newell II* had not yet been filed. Instead, the magistrate judge based his decision to quash the subpoena on his assessment that the request failed to comply with Fed. R. Civ. P. 45(a)(1)(A)(iii), which requires that a subpoena "command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents. . . ." Since the hearing on attorney's fees was not evidentiary in nature, the subpoena required Bender's attorney to appear and testify at an improper time and place. In addition to this basis for quashing the subpoena, there is now no basis for reversing the quashing of the subpoena. The material that the subpoena sought, though relevant to the issues subsequently raised in *Newell II*, is not relevant to the issues in this case.

The judgment of the district court is affirmed.